DAVID R. TODD and JAMES M. TODD, Appellants, *v.* WILLIAM M. BROWN and Others, Respondents.

First Department, April 5, 1917.

Usury — loan of corporate stock — receipt of compensation in excess of legal rate of interest.

Action to have declared usurious and void the transfer of shares of stock which plaintiffs allege was a mere pretense of a sale thereof and designed to cover a usurious loan from the defendant. *Held*, on all the evidence, that the transaction was not a sale, but was in fact a loan for which the defendant was to receive as compensation an amount in excess of the legal rate of interest.

APPEAL by the plaintiffs, David R. Todd and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 24th day of April, 1914, dismissing the complaint on the merits upon the decision of the court after a trial at the New York Special Term.

*Charles J. Hardy,* for the appellants.

*Carl M. Owen,* for the respondents.

DAVIS, J.:

The action was brought to have declared usurious and void a transaction involving 250 shares of stock which plaintiffs allege was a mere pretense of a sale thereof and designed to cover a usurious loan from defendant Brown to the plaintiffs. The defendants claim that the transaction was a genuine sale of the stock and not a loan.

On or about December 30, 1911, the plaintiffs owned and possessed 250 shares of the capital stock of the Seventy-sixth Street Company. At this time the company owned the premises known as The Lombard, situated at Seventy-sixth street and West End avenue, New York city. The board of directors was composed of the defendant Delamater, president and owner of one-fourth of the capital stock; defendant Nicol, vice-president and owner of one-fourth thereof; the plaintiff James M. Todd, the secretary, and the plaintiff David R. Todd, the treasurer, each owning one-fourth of the stock.

There was a second mortgage of $77,600 on the property of the company which the plaintiffs and defendants above named felt bound to pay off in order to preserve the equity in the property. When the mortgagee threatened to foreclose the mortgage, the defendants Delamater and Nicol were able to pay one-half of the $77,600, but the plaintiffs could not. Thereupon an arrangement was made by the plaintiffs whereby the Allenel Construction Company took over the mortgage, the defendants Delamater and Nicol giving to the Allenel Company one-half of $77,600, thus taking a one-half interest in the mortgage, which interest was declared in an instrument thereafter recorded.

In the latter part of November, 1911, the Allenel Construction Company demanded payment of the mortgage and threatened to foreclose. This attitude of the mortgagee made it imperative for the plaintiffs to obtain a loan to enable them to pay their one-half of the mortgage. The plaintiffs thereupon applied to the defendant Nicol for the loan, and Nicol in their behalf communicated with the defendant Brown, who in the previous year had entered into a similar transaction with

the plaintiffs. Nicol wrote thus to the defendant Brown on December 21, 1911:

"DEAR GOVERNOR.— As you know, the Todds owe $38,800 on their Lombard second mortgage. This has been carried by Mordecai. The Todds have been unable to raise the amount and this morning D. R. tells me that Mordecai's attorneys have notified him that they will begin foreclosure proceedings on next Tuesday if payment in the meantime is not made. I rather question if the Todds are going to be able to raise the money, unless they pay a very large commission. If you can raise the funds at the moment, think I could make a much better deal for you than when you purchased their stock in November of last year, and furthermore, your security would be much better. * * * The Todds are extremely anxious to avoid a foreclosure proceeding and for this reason are now in a frame of mind to accept almost any sort of a proposition which will relieve them. If you care to consider the matter at all, would suggest that you wire me immediately on receipt of this, so that I can be framing up some sort of a proposition on your behalf.

" Mr. Delamater tells me he can, if necessary, raise $20,000, but like me, he does not wish to participate, unless it has to be done as a last resort; but being practically partners with the Todds, both he and I feel that we cannot put up the same sort of a proposition to them on our own behalf as we can on behalf of a third party.

" Briefly, my own thought is if you were willing to have Mordecai assign to you his mortgage that in consideration of your advancing the money, the Todds pay you 6% per annum interest and sell you their stock, with the option to repurchase for say $5,000, which would be equivalent to paying you at the rate of over 30% per annum, in case they repurchased within the six months period. They might also be willing to pay $7,500, to repurchase the stock which would net you about 45% per annum, in case they repurchased. If they did not repurchase, you would, of course, make a great deal more. Furthermore, think they would be willing to personally agree to turn over to you their income out of the building during the six months' period in case they did not repurchase. This is substantially along the same lines of your last agreement, only considerably

First Department, April, 1917.                [Vol. 177.

more profitable and safer. The money would probably have to be raised about the middle of next week. Wire me immediately on receipt of this if you are at all interested.

"Sincerely yours,

"A. R. NICOL."

On December twenty-third Brown answered by telegram as follows: "Bid $39,000 for stock and mortgage. Option to buy back in six months at $46,000 and earnings and interest." Thereafter followed various interviews between the parties, the nature of which is differently stated by plaintiffs and defendants, one side insisting that the transaction was referred to as a loan, and the other with equal emphasis claiming that the subject of a loan was not even mentioned. The result, however, was the execution of the agreement of December 30, 1911, between the plaintiffs and defendant Brown, which sets forth the transaction claimed by the plaintiffs to be usurious. In the first part of the instrument the plaintiffs sell, assign, transfer and set over to Brown their stock holdings in the Seventy-sixth Street Company for the consideration of one dollar. The agreement then proceeds:

"*For one dollar* and other valuable considerations to him paid by DAVID R. TODD and JAMES M. TODD, respectively, and receipt of which is acknowledged hereby, WILLIAM M. BROWN agrees hereby with said David R. Todd and James M. Todd, jointly and severally, that upon payment to him, or to the depositary of the stock as hereinafter provided for, at any time prior to the expiration of one year from date of the sum of Forty-six Thousand Dollars ($46,000), with interest upon Thirty-nine Thousand Dollars ($39,000), calculated at the rate of six per cent. (6%) per annum from date hereof to the date of such payment, payable semi-annually he will sell and assign and will transfer and deliver unto David R. Todd and James M. Todd, above named, or either of them, or upon their joint order, the shares of stock of Seventy-sixth St. Company so as aforesaid by them sold, transferred and assigned to him, said Brown, and delivered simultaneously with the execution hereof. And for the purpose of making effective this agreement by Brown for the sale and delivery by Brown to David R. Todd and James

M. Todd of the stock aforesaid, said Brown hereby covenants and agrees with David R. Todd and James M. Todd, jointly and severally, as follows:

"1. That he will, immediately upon the execution hereof, deliver to and deposit with ALEXANDER R. NICOL, of New York City, the above-recited shares of stock Seventy-sixth St. Company, upon and subject to the following terms and conditions and not otherwise, to wit:

"(a) Upon payment to said Brown at any time within one year from this date of the sum of Forty-six Thousand Dollars ($46,000), with interest on Thirty-nine Thousand Dollars ($39,000), calculated at the rate of six per cent (6%) per annum from the date hereof to the date of such payment; or upon the payment or lawful tender of the same amount at any time within the said period unto the said Alexander R. Nicol, said Nicol shall forthwith transfer and deliver the said shares of stock and every of them to the said David R. Todd and James M. Todd (either or both) or upon their joint order.

"(b) At the expiration of one year from this date, and if there shall have been made prior thereto neither the payment nor the lawful tender of payment hereinabove specified, said Nicol shall forthwith transfer and deliver the said shares of stock and every of them unto said Brown. It is further agreed that if the interest due June 30th, 1912, be not paid, within ten days, the option hereby created becomes void, and the said Nicol shall forthwith transfer and deliver the said shares of stock unto said Brown —

"And the said Brown does hereby constitute and appoint the said Alexander R. Nicol his attorney irrevocable for the purpose of holding and acting as above provided for with relation to the said stock of Seventy-sixth St. Company so to be delivered to and deposited with him, the said Nicol.

"*It is further agreed* between the said David R. Todd and James M. Todd and the said William M. Brown as follows:

"Brown agrees that so long as the above-recited stock shall remain subject to the terms of the foregoing agreement it shall not, nor shall any of it, be transferred upon the books of said Seventy-sixth St. Company.

"David R. Todd and James M. Todd, jointly and severally, agree that if the said shares of stock and every of them shall not be purchased as hereinabove provided for, then they will, upon the expiration of one year from date hereof, pay unto said Brown all moneys that they (either or both) shall receive from Seventy-sixth St. Company, either as salary or as dividend, between the date hereof and one year from this date."

The learned trial court held that the transaction was a sale with an option to repurchase. We do not agree with the conclusion reached by the trial court. The evidence shows clearly that the plaintiffs were seeking a loan for the purpose of preserving their stock by protecting the equity in the company's property. It was because he knew that plaintiffs wanted a loan that Nicol wrote his letter to Brown, in which he reveals to Brown the critical position of the plaintiffs and places in such an attractive light the large returns to be received by Brown's coming to the assistance of the plaintiffs in their plight.

He wrote the "The Todds * * * are now in a frame of mind to accept almost any sort of a proposition which will relieve them." He then tells Brown that if the Todds accepted the proposition suggested by Nicol and repurchased the stock, it would net Brown forty-five per cent, and if they did not repurchase within six months it would net him thirty per cent. Interpreting the agreement in the light of Nicol's letter to Brown, the conclusion is inevitable that the purpose and effect of the agreement were to make a loan of $39,000 for a year, for which the plaintiffs were to pay at the rate of six per cent per annum payable semi-annually together with a bonus of $7,000, and to conceal that purpose under the form of a purchase and sale of the stock collateral. If a sale for $39,000 were intended, it is pertinent to inquire why $39,000 was not expressed as the consideration instead of one dollar, and why there should be any interest at all, especially upon $39,000 rather than upon $46,000. Again, the interest on the $39,000 was payable semi-annually, and if the interest was not paid within ten days after it becomes due, the so-called option to repurchase became void.

This provision is strong proof that there was really no purchase of the stock as claimed by the defendants. Disregard-

ing, as we should, the form of this transaction and getting at its substance, it becomes apparent that the plaintiffs borrowed $39,000 from the defendant Brown for one year, for which they agreed to pay him interest at the rate of six per cent per annum payable semi-annually with a bonus of $7,000, the stock being held as collateral security. Moreover, the agreement also provides that if the plaintiffs should not repurchase the stock at the end of the year they will pay over to Brown all moneys received by them from the company during the year, either as salaries or dividends on the stock. All these circumstances are inconsistent with the purchase theory, and are convincing evidence that the transaction was in fact a loan for which the defendant Brown was to receive as compensation an amount in excess of the legal rate of interest.

For these reasons this judgment should be reversed and a new trial granted.

As to whether the cause of action survives the death of the defendant Brown we do not decide, as it is not properly before us on this appeal.

The judgment is reversed and a new trial granted, with costs to the appellants to abide the event.

CLARKE, P. J., LAUGHLIN, SCOTT and SHEARN, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellants to abide event. Order to be settled on notice.